BEAL BANK, S.S.B. *v.* Larry THORNTON, a/k/a
Larry Johnson Thornton, Jr., *et al.*

CA 99-435                                        19 S.W.3d 48

Court of Appeals of Arkansas
Division IV
Opinion delivered June 7, 2000
[Petition for rehearing denied July 26, 2000.]

*Wilson & Associates, P.L.L.C.*, by: *Daniel L. Parker*, for appellant.

*Kirk D. Johnson*, for appellees.

JOHN MAUZY PITTMAN, Judge. This is an appeal from an order of the Miller County Chancery Court denying appellant Beal Bank's petition to foreclose on a deed of trust securing a promissory note on which appellees Larry Thornton and Edwina Thornton defaulted in 1988. We find merit in one of appellant's points for appeal, and we affirm in part and reverse in part.

On May 9, 1986, appellees signed a promissory note to Texana Savings and Loan Association and gave a deed of trust to secure the debt. Appellees made their last payment on the note in

May 1988, and later that summer, the bank accelerated the unpaid balance. On July 8, 1996, appellant filed suit against appellees to foreclose on the deed of trust, claiming that the note and deed of trust had been assigned to it by its subsidiary, Loan Acceptance Corporation ("LAC"), on November 3, 1995. According to appellant, LAC had received an assignment of the documents from the Resolution Trust Corporation ("RTC") while acting as conservator and receiver of Sunbelt Federal Savings, F.S.B. ("Sunbelt"). Appellant could not produce the note but did have a copy of the deed of trust.

Appellant sought to introduce exhibits demonstrating the assignments through the testimony of Mark Bauer, a loan officer for appellant. Mr. Bauer was appellant's only witness at trial. Appellees did not deny signing the note and defaulting on it in 1988 but asserted that the statute of limitations had run and resisted appellant's attempted introduction of documents relating to the assignments on the grounds that they were not authenticated and were hearsay. Appellant was successful in getting its assignment from LAC into evidence under the business records exception to the hearsay rule set forth in Arkansas Rule of Evidence 803(6) but could not get into evidence a copy of the assignment from the RTC to LAC (Plaintiff's Exhibit F), a copy of a letter from the Office of Thrift Supervision ("OTS") to Sunbelt notifying it that the RTC had been appointed as its conservator, or a copy of the April 25, 1991, order of the OTS relating to the appointment of the RTC as Sunbelt's receiver and conservator (Plaintiff's Exhibit D). Appellant proffered Plaintiff's Exhibits D and F, and the chancellor kept the record open for appellant to supplement it with a certified copy of Plaintiff's Exhibit D. With its posttrial brief, appellant filed additional OTS documents.

In his order denying foreclosure to appellant, the chancellor found that appellant had "failed to sustain its burden of proof that it is the legal owner to the property that is the subject of this suit"; that appellant had wholly failed to establish that it is a proper party to this litigation; that the statute of limitations began to run in May 1988; that, because no admissible evidence was introduced that the RTC ever had ownership of the property, Arkansas's five-year statute-of-limitations controlled; that appellees had established adverse possession of the property; and that the documents filed with appel-

lant's posttrial brief and Plaintiff's Exhibit F were not admissible into evidence. It is from this order that appellant brings this appeal.

Appellant argues that the federal six-year statute of limitations set forth in 12 U.S.C. § 1821(d)(14) of the Financial Institutions Reform Recovery and Enforcement Act (FIRREA), enacted in 1989, applies to this case. Appellant also asserts that the documents filed with its posttrial brief, Addendum Exhibits 3, 4, 5, and 6, should have been admitted into evidence. Because, as explained below, the chancellor's finding that appellant failed to prove that it is the owner of this note and deed of trust is not clearly erroneous, we need not decide the statute-of-limitations and evidentiary arguments.

■ Appellant argues that the chancellor erred as a matter of law in finding that appellees adversely possessed the property covered by the deed of trust. We agree. As appellant points out, appellees are the legal owners of this property and, even after default, appellant had no automatic right of entry to it. One must have the right of entry before another can hold adversely to him. *Smith v. Kappler*, 220 Ark. 10, 245 S.W.2d 809 (1952).

■ In its fourth point on appeal, appellant contends that, because appellees' responses to its requests for admissions were untimely, the matters of which it requested admission should have been deemed admitted and the chancellor should have granted it foreclosure. However, appellant did not make this argument to the chancellor. We do not address an issue that is raised the first time on appeal. *Giles v. Sparkman Residential Care Home, Inc.*, 68 Ark. App. 263, 6 S.W.3d 140 (1999).

Appellant also contends that, in their responses to appellant's interrogatories, appellees admitted all facts that would entitle appellant to relief, or that the trial should at least have been limited to the statute-of-limitations and adverse-possession issues. After presenting its case-in-chief, appellant moved, without objection, for appellees' answers to interrogatories to be admitted into evidence. After appellees called Mr. Thornton as a witness, appellant argued that appellees' responses to Interrogatory Number 2 should bar any testimony "put on as a defense of foreclosure...." Appellees responded that they had never waived any issue and that, should there be any question about their position, they would request an

amendment at that time. The chancellor then asked appellant's counsel if his objection was premised on the idea that the statute of limitations was waived by that response. Appellant's counsel answered that it was. The chancellor replied: "[S]ince the same document clearly indicates the other intent, I will note it, but I will overrule it."

Thus, without citation to authority, appellant is asking us to hold that a response to an interrogatory has the same legal effect as an answer to a request for admission. We do not address an argument in the absence of citation to authority or convincing argument. *Presley v. Presley*, 66 Ark. App. 316, 989 S.W.2d 938 (1999). Additionally, appellant failed to obtain a ruling on this question at trial; the only ruling made by the chancellor in this regard was whether appellees had waived the statute-of-limitations defense. Without such a ruling, we will not address an issue on appeal. *Robinson v. Winston*, 64 Ark. App. 170, 984 S.W.2d 38 (1998). Even had appellant preserved this issue, we would not need to interpret the Rules of Civil Procedure, as it asks us to do, to decide the question presented in this case. The trial judge essentially decided that appellees' answers to the interrogatories were conflicting and therefore, ambiguous, and that, in light of this ambiguity, appellees did not waive their defenses to this suit. Whether a waiver occurred is a question of intent, which is usually a question of fact. *Dugal Logging, Inc. v. Arkansas Pulpwood Co.*, 66 Ark. App. 22, 988 S.W.2d 25 (1999). We do not reverse the chancellor's finding of fact unless it is clearly erroneous. *Id.* Here, considering appellees' answer to appellant's complaint, all of their responses to interrogatories, and their evidence and argument at trial, we cannot say that the chancellor clearly erred in finding that they had not waived their defenses to this suit.

We now turn to the chancellor's finding that appellant failed to provide ownership of the note and mortgage. With the exhibits admitted at trial, appellant proved that (1) appellees signed a note and gave a deed of trust to Texana in 1986; (2) that the note has been lost; (3) and that LAC assigned whatever rights it held under the lost note and the deed of trust to appellant on November 3, 1995. Appellees stipulated to the note's essential terms and that they have not made a payment since May 1988. If the documents denied admission into evidence had been admitted, appellant would have proven that the RTC was appointed as receiver for Sunbelt on April

25, 1991, and that the RTC assigned its rights under the lost note and the deed of trust to LAC on August 10, 1995. However, appellant introduced no evidence of any assignment of the note and deed of trust from Texana to Sunbelt. Therefore, it would make no difference what statute of limitations might have applied or whether the chancellor should have admitted the proffered documents into evidence, because appellant did not establish a Texana-to-Sunbelt link in the chain of successive assignments.

Unless the defendant admits the assignment under which the plaintiff claims, the plaintiff has the burden of proving that there was a valid assignment in order to show that he or she has a cause of action. 6 AM. JUR. 2D *Assignments* § 191 (1999). "Whether an assignment of contract rights has occurred is determined by the intent of the parties; the assignor must intend to transfer a present interest in the subject matter of the contract." *Id.* at section 135. The intent of parties to an assignment is a question of fact derived from the instruments and the surrounding circumstances; therefore, whether an assignment occurred is a question of fact for the trial court. *Id.* at sections 136 and 190.

> The assignee's burden of proving the existence of the assignment is met by evidence that is satisfactory in character to protect the defendant from another action by the alleged assignor, and which shows that there was a full and complete assignment of the claim from an assignor who was the real party in interest with respect to the claim.

*Id.* at section 193. A trial court's finding as to whether an assignment occurred will not be reversed unless it is clearly erroneous. *See Northwest Nat'l Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 25 Ark. App. 279, 757 S.W.2d 182 (1988).

We note that Ark. Code Ann. § 4-58-109 (Repl. 1996) provides:

> The assignee of any instrument in writing made assignable by law, on bringing suit on any assigned paper, shall not be required to prove the assignment, unless the defendant annexes to his answer an affidavit denying the assignment and stating in the affidavit that he verily believes that one (1) or more of the assignments on the instrument of writing was forged.

This statute, however, only applies if *written* documentation of an assignment has been produced by the plaintiff. Here, there is no such documentation of any assignment from Texana to Sunbelt or of Sunbelt's acquisition of Texana's assets.

█ At trial, appellant attempted to introduce into evidence an affidavit by Charles S. Blaylock, attorney-in-fact for the RTC, stating that the note had been lost or misplaced. Appellees successfully objected to this affidavit's admission into evidence, but did stipulate as to the note's terms and that it had been lost. The loss of the note, along with appellant's failure to introduce evidence of the purported assignment of Texana's rights in the note and deed of trust to Sunbelt, require us to hold that the chancellor's finding that appellant failed to prove that it owns the note and deed of trust is not clearly erroneous.

Reversed as to the adverse possession issue; affirmed in all other respects.

CRABTREE and MEADS, JJ., agree.